UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 12-51127 |
| | § | |
| **Piccadilly Restaurants, LLC**, *et al*., | § | (Joint Administration Requested) |
| | § | |
| | § | Chapter 11 |
| **Debtors** | § | |
| | § | Judge Robert Summerhays |

**OBJECTION OF ATALAYA ADMINISTRATIVE LLC TO THE
DEBTORS' EMERGENCY MOTION FOR ORDER (I) AUTHORIZING THE
DEBTORS TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§
364(c) AND 364(d), (II) AUTHORIZING THE DEBTORS' USE OF CASH
COLLATERAL PURSUANT TO 11 U.S.C. § 363(c); (III) GRANTING ADEQUATE
PROTECTION PURSUANT TO 11 U.S.C. § 361; AND (IV) SCHEDULING A FINAL
HEARING PUSUANT TO BANKRUPTCY RULE 4001(c)**

Atalaya Administrative LLC, in its capacity as administrative agent ("Agent") for Atalaya Funding II, LP, Atalaya Special Opportunities Fund IV LP (Tranche B), and Atalaya Special Opportunities Fund (Cayman) IV LP (Tranche B), (collectively "Lenders")[1], secured lenders to Piccadilly Restaurants, LLC ("Piccadilly"), Piccadilly Food Service, LLC ("PFS") and Piccadilly Investments, LLC ("Investments" and collectively, the "Debtors"), files this objection to the *Emergency Motion for an Order (I) Authorizing the Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 364(c) and 364(d), (II) Authorizing the Debtors' Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c); (III) Granting Adequate Protection Pursuant to 11 U.S.C. § 361; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)* (the "Motion") (Docket #15), and in support, would show the Court as follows:

---
[1] Agent together with Lenders shall be referred to herein collectively as "Atalaya."

# PRELIMINARY STATEMENT

The Debtors are owned and controlled by Yucaipa Corporate Initiatives Fund I, L.P. ("Yucaipa"), a California based private equity firm that purchased the Debtors out of a prior bankruptcy in 2004. Atalaya is the Debtors' sole secured lender, with more than $26 million in pre-petition debt secured by substantially all of the Debtors' assets. That pre-petition debt matured more than two years ago, and the Debtors have not made a single payment - - interest or principal - - to Atalaya for a full year. Despite the matured facility, and the lack of any payments, Atalaya negotiated with the Debtors and Yucaipa over the last three months in an attempt to reach a consensual restructuring of the Debtors' balance sheet. Contrary to the Debtors' contention, it was Yucaipa who took precipitous action here by attempting to renegotiate the terms of the proposed restructuring at the eleventh hour, and refusing to allow the Debtors to comply with the terms of the existing credit agreement. Because it was clear that a consensual out-of-court restructuring was not possible, Atalaya had no choice but to exercise remedies as provided for under the Credit Agreement.

Now, on one day's notice, the Debtors have requested approval of a "priming DIP" facility to be provided by a Yucaipa affiliate - - an insider. But the Debtors could never meet their burden to obtain interim approval of the proposed DIP financing because:

- The Debtors simply do not need *any* DIP financing on an emergency basis - - their own projections demonstrate that fact - - and therefore, the proposed DIP financing (on its face) is not necessary prevent irreparable harm.

- The Debtors cannot demonstrate that they are unable to obtain credit on less onerous terms - - the Debtors admit they have only sought financing from Yucaipa, and have not even approached Atalaya regarding financing.

- The Debtors cannot adequately protect Atalaya's interest, as there is no equity in the pre-petition collateral, and no additional collateral is being offered to Atalaya.

- The proposed DIP financing cannot withstand the heightened scrutiny applied to insider transactions, as the financing appears aimed primarily at benefiting Yucaipa, rather than the estates.

For these reasons, the Court should deny the Debtors' Motion.

## BACKGROUND

1. On September 11, 2012 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

### Secured debt

2. The Debtors are party to an Amended and Restated Loan and Security Agreement (as amended or modified, the "Credit Agreement") dated July 21, 2006, by and among Piccadilly, Investments, PFS and Wells Fargo Capital Finance, LLC, formerly known as Wells Fargo Foothill, LLC ("Wells Fargo"), as agent, and the lenders identified therein. The Secured Credit Facility consists of a $20 million revolving loan ("Revolving Facility"), a letter of credit facility ("Letter of Credit Facility"), and a $16 million term loan ("Term Loan Facility"). Together, the indebtedness outstanding under Revolving Facility, Letter of Credit Facility and Term Loan Facility is referred to herein as the "Pre-Petition Debt."

3. On or about April 9, 2012, Well Fargo (a) assigned its interests in Credit Agreement to the Lenders and (b) resigned as agent under the Credit Agreement and appointed Atalaya Administrative LLC as agent there under.

4. The Pre-Petition Debt is secured by liens on substantially all of the assets of the Debtors as well as on the membership interests in Piccadilly held by Investments (the "Pre-Petition Collateral"). The Prepetition Collateral and all rents, income, profits, cash in accounts and deposits derived from the Prepetition Collateral constitute cash collateral (collectively, the "Cash Collateral") pursuant to sections 363(a) and 552(b)(2) of the Bankruptcy Code.

**Matured credit facility, negotiations with Yucaipa breakdown**

5. It is undisputed that the Credit Agreement matured more than two years ago. On or about March 14, 2012, Wells Fargo notified the Debtors and Yucaipa of its intent to take enforcement action, and in that correspondence expressed concern over Yucaipa's handling of the Debtors' business and its failure to allow any meaningful restructuring to take place. Shortly thereafter Atalaya obtained an assignment of Well Fargo's debt.

6. At about the same time Wells Fargo assigned its debt to Atalaya, the Debtors began diverting all funds from the controlled accounts established and required under the Credit Agreement. Further, the Debtors refused to grant Atalaya access to the Debtors' books and records and would not allow Atalaya's financial advisor to visit the Debtors' office and discuss operational issues. Atalaya immediately notified the Debtors that the Debtors' failure to comply with the Credit Agreement was a default (in addition to the failure to pay the matured facility), and that Atalaya intended to exercise remedies.

7. In response, Yucaipa contacted Atalaya and the parties began negotiations regarding a restructuring. The negotiations were prolonged by Yucaipa and the Debtors for approximately three months, although Atalaya was assured by Yucaipa at every turn that the substantive deal terms were not in dispute. Then, suddenly in late August, Yucaipa changed its position regarding the restructuring. Further, Yucaipa informed Atalaya that the Debtors would not comply with material terms of the Credit Agreement concerning cash controls. During this period of time, the Debtors made no payments to Atalaya. In fact, the Debtors have made no payments to either Atalaya or Wells Fargo for approximately a year.

8. Because it was clear that no consensual restructuring could be accomplished, and because of the Debtors' substantial and continuing defaults under the Credit Agreement, Atalaya had no choice but to exercise remedies under the Credit Agreement. Accordingly, Atalaya filed a

petition in the 19th Judicial District Court in Baton Rouge, Louisiana (the "State Court Lawsuit"). While a keeper was appointed in the State Court Lawsuit, Atalaya did not direct the keeper to take any action to seize property of the Debtors, and Atalaya does not believe any such action was taken by the keeper.

**Proposed insider DIP financing**

9. At approximately 1:30 a.m. on September 12, 2012, the Debtors filed their Motion requesting approval of the proposed DIP financing to be provided by a Yucaipa affiliate. The Debtors' have obtained an emergency hearing to consider the proposed DIP financing on approximately one day's notice. The Debtors and Yucaipa seek to prime Atalaya's pre-petition secured position with the proposed $5 million DIP facility.

10. In addition to the extraordinary request to prime Atalaya's secured position, the DIP facility includes a number of other egregious terms:

- Minimum draw requirement of $1,000,000, with $3,000,000 available on an interim basis, despite the Debtors' lack of need for any funding at any time in the near future;

- Upon an event of default, immediate relief for Yucaipa from the automatic stay upon five days written notice;

- An immediate release for Yucaipa for any acts related to the proposed DIP facility; and

- A release of *all* estate claims against Yucaipa for any acts, including breach of fiduciary duty, upon entry of a final order.

For the reasons set forth below, the proposed DIP financing should be denied.

**OBJECTION**

11. While a court generally defers to a debtor's business judgment in assessing proposed DIP financing, a court should only defer to the debtor's business judgment "so long as a request for financing does not leverage the bankruptcy process and unfairly cede control of the reorganization to one party in interest." *See In re Barbara K. Enters., Inc.*, No. 08-11474 (MG),

2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008)(citation and internal quotations omitted).

12. The proposed DIP financing here is an insider transaction. The proposed DIP Lender, CB Investments, LLC, is "an affiliate of the managing member of Investments." Motion, ¶ 23, page 8. The managing member of Investments is a Yucaipa affiliate, as is the proposed DIP lender. As an insider transaction, the proposed DIP financing is subject to even more rigorous scrutiny. *See In re Fabricators, Inc.,* 926 F.2d 1458, 1465 (5th Cir. 1991)(dealings between a debtor and an insider must be "rigorously scrutinized by the courts.") This heightened scrutiny requires proof that the transaction is proposed in good faith, and is *inherently fair* from the viewpoint all debtor constituencies. *See Pepper v. Litton*, 308 U.S. 295, 306 (1939)(insider transactions with corporation are "subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the [insider] not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.")

13. Here, the proposed DIP financing does not appear to be necessary, and certainly is not necessary on an immediate basis. Further, the Debtors admit they have not approached any potential lender other than Yucaipa, and therefore cannot demonstrate that credit on less onerous terms is unavailable. Finally, the Debtors propose to prime Atalaya's secured position without offering any real adequate protection. Seeking approval of unnecessary financing, without exploring other options, and on a basis that harms the Debtors' secured lender and largest credit, all for the primary benefit of Yucaipa, demonstrates a lack of good faith and inherent unfairness.

**DIP financing is not necessary to avoid irreparable harm**

14. The Debtors' Motion requests interim authority, on one day's notice, to obtain DIP financing which is not immediately necessary to avoid irreparable harm. The Debtors bear the

burden of showing that approval of extension of credit on less than 14 days notice is "necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 4001(c)(2). But the Debtors' own pleadings demonstrate that DIP financing is not needed.

15. Attached as Exhibit A to the Motion is the Debtors' proposed cash collateral budget. That budget shows a beginning cash balance of $1,148,516, and a positive cash balance at the end of each week for the entire budget period, without any borrowing under the proposed DIP facility. In fact, during the first four weeks of the proposed budget, the Debtors' ending weekly cash balance never dips below $500,000. There is simply no immediate need for funds reflected in the Debtors' budget.

16. Further evidence of the lack of need for immediate DIP financing is the fact that the Debtors have not had any funding for five months and, in that time, have accumulated (and diverted) over $1 million. In other words, the Debtors have been operating on a positive cash flow basis for the last 5 months, and only now, on one day's notice, they suddenly "need" access to a $5 million in DIP financing, provided by an insider, on egregious terms.

17. As set forth below, to the extent necessary, Atalaya is willing to consent to use of Cash Collateral on a limited basis, subject to certain market terms. Further, Atalaya is willing to consider providing DIP financing after it is able to conduct an independent evaluation of the Debtors' need for funding. That evaluation can be completed within a week - - provided the Debtors cooperate. Accordingly, the Debtors simply do not need the proposed DIP financing.

**The Debtors have failed to comply with Section 364(d)(1) of the Bankruptcy Code**

18. Section 364(d)(1) of the Bankruptcy Code provides:

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –

Page 7 of 13
660699
12-51127 - #36  File 09/13/12  Enter 09/13/12 09:28:21  Main Document  Pg 7 of 13

> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1). The rigorous statutory safeguards on non-consensual priming set forth in section 364(d)(1) of the Bankruptcy Code emphasize that such relief is extraordinary and should only be allowed as a last resort. *See In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("[G]ranting post-petition financing on a priming basis is extraordinary and is allowed only as a last resort.")(citations omitted). A debtor bears the burden of proving that a primed lender's security interests are adequately protected pursuant to section 364(d)(1)(B) of the Bankruptcy Code. 11 U.S.C. § 364(d)(2). Here, the Debtors cannot meet either requirement of Section 364(d)(2).

**Debtors cannot demonstrate that credit is unavailable on less onerous terms**

19. The Debtors cannot demonstrate that credit is unavailable on less onerous terms as required by Section 364(d)(1)(A) of the Bankruptcy Code. The Debtors admit that they have not sought financing from any other source other than Yucaipa. *See* Motion, ¶ 29, page 14. In fact, the Debtors have not even approached Atalaya to request financing, despite the fact that Atalaya is the current secured lender, and had previously indicated a willingness to provide funding in connection with a restructure. The fact that the Debtors have only sought financing from Yucaipa, without exploring other possible financing sources (including Atalaya), requires denial of the requested relief. *See Suntrust Bank v. Den-Mark Constr. (In re Den-Mark Constr., Inc.)*, 406 B.R. 683, 690 (E.D.N.C. 2009) (vacating bankruptcy court's approval of priming DIP because the record did not clearly show that the debtors had attempted to no avail to obtain postpetition financing on a less onerous basis).

20.     If Atalaya were to provide financing, that financing could be provided without the need for non-consensual priming.  As stated above, Atalaya would consider financing under appropriate circumstances, provided the Debtors actually need financing at this time. That fact alone requires denial of the Motion.  *See In re Harborwalk, LP*, 2010 WL 346298 (Bankr.S.D.Tex.2010)(denying priming DIP request because of non-compliance with 11 U.S.C. § 364(d)(1)(A) where existing lender could provide funding).

**Debtors do not provide
adequate protection to Atalaya**

21.     The Debtors do not even attempt to argue that Atalaya is oversecured, and the Debtors offer no other collateral as adequate protection for the proposed priming of Atalaya's secured position.  Rather, the Debtors argue that the proposed DIP financing will somehow "preserve and enhance going concern value," thereby adequately protecting Atalaya's interest.  Setting aside whether the Debtors actually need the proposed DIP financing to maintain a going concern, preservation of the Debtors as a going concern does not adequately protect Atalaya for diminution in its secured position as a result of a priming DIP financing.

22.     It is well settled that use of DIP financing to maintain a company as a going concern is not in and of itself adequate protection of a secured creditor's interest in the company's collateral when that interest is being primed. *See Desert Fire Prot. v. Fontainebleau Las Vegas Holdings, LLC (In re Fontainebleau Las Vegas Holdings, LLC)*, 434 B.R. 716, 749-752 (S.D. Fla. 2010)(finding the fact that the debtor-in-possession financing was necessary to preserve, and possibly enhance, the value of the debtor's assets "beside the point" in determining whether a secured creditor being primed by a priming DIP facility was adequately protected, and

that "the inquiry ought to have focused on compensating the [secured lender] for the loss of value of their interests in the [collateral] caused by the priming lien").[2]

23. Here, where the Debtors do not even argue that Atalaya is oversecured, the fact that the Debtors assert that going concern value will be preserved is irrelevant for the purpose of evaluating adequate protection. If there is no equity in the collateral, then the going concern value, if any, is solely Atalaya's collateral, and Atalaya's secured position should not be diminished by Yucaipa's self-serving attempts to "preserve" Atalaya's value. To be sure, Atalaya has not suggested that liquidation is appropriate at this juncture, but if the value of Pre-Petition Collateral is less than the Pre-Petition Debt, Yucaipa certainly should have no voice in a such a decision. The fact that Yucaipa is apparently only willing to advance funds on a priming basis demonstrates that Yucaipa does not believe that value exists above and beyond Atalaya's debt. Such an admission is sufficient evidence to establish that preservation of going concern value does not adequately protect Atalaya.

24. The Debtors also assert that "junior" replacement liens will be granted to Atalaya as adequate protection. But Atalaya already has a lien on substantially all of the Debtors' assets. Accordingly, a junior replacement lien is of little to no value to Atalaya and cannot constitute adequate protection. It is well settled that adequate protection cannot be provided by replacement liens in collateral already subject to a lender's pre-petition lien. *See In re Las Torres Development, L.L.C.*, 413 B.R. 687, 696 (Bankr.S.D. Tex. 2009)("its is disingenuous to argue

---

[2] The Debtors cite *In re Yellowstone Mountain Club*, LLC, No. 08-61570-11, 2008 WL 5875547 (Bankr. D. Mont. Dec. 17, 2008) and *In re New World Pasta Co.*, No. 04-02817, 2004 Bankr. LEXIS 2638 (Bankr. M.D. Pa. July 19, 2004), to support their contention that maintaining a "going concern" alone can satisfy requirement of adequate protection. Neither case stands for that proposition. In *Yellowstone*, the debtor secured the priming DIP with unencumbered property that was more than sufficient to repay the DIP financing. Further, the *New World Pasta Co.* was not a true "priming" case, as the DIP financing was provided by the pre-petition lender who simply "primed" itself with the financing. Neither case is applicable here.

Page 10 of 13
660699
12-51127 - #36  File 09/13/12  Enter 09/13/12 09:28:21  Main Document  Pg 10 of 13

that the Debtors can grant replacement liens to the Lender on [collateral] because the Lender already has a lien on [that collateral]."[emphasis added]); *In re LTAP US, LLP*, No. 10-14125 (KG), 2011 WL 671761, *3 (Bankr. D. Del. Feb. 18, 2011) ("Providing [the lender] with a replacement lien on assets against which it already has a lien is illusory. Debtor must provide [the lender] with additional collateral, and there is none.")

25. The Debtors offer to provide financial information to Atalaya is equally as inadequate to compensate Atalaya for diminution of its collateral position. The Debtors argue that Atalaya will be able to monitor its collateral position and that somehow this adequately protects Atalaya. Such reporting is obviously necessary, but being afforded an opportunity to monitor the diminution of its collateral hardly protects Atalaya for that harm.

**Cash Collateral use should be limited**

26. To the extent limited use of cash collateral is necessary to maintain the Debtors' operations on an interim basis, and Atalaya is willing to consent to such use pursuant to the budget, and conditioned upon the following:

- Only expenditures necessary to prevent irreparable harm to the Debtors shall be made during the interim period;

- No payments shall be made to insiders or affiliates of insiders;

- Atalaya shall receive replacement liens on all unencumbered assets of the Debtors as additional adequate protection for diminution in its position as a result of cash collateral use;

- Atalaya shall have access to the Debtors' facilities and to its personnel to inspect collateral, monitor performance, and evaluate the Debtors' need for financing.

27. As a result of the various issues surrounding the Debtors' requested financing, as well as the potential need to conduct expedited discovery related to certain insider issues, Atalaya respectfully requests that the Court:

- Schedule a final hearing no sooner than thirty (30) days from entry of an interim order; and

- Limit the initial interim order to fourteen (14) days, and schedule another interim hearing within that period, to address the need for financing.

## PRAYER

WHEREFORE, Atalaya respectfully requests that this Court deny the Debtors' Motion, allow limited use of Atalaya's Cash Collateral as provided herein on an interim basis, and schedule subsequent hearings as requested above.

Dated: September 13, 2012                Respectfully submitted,

                                                CARVER, DARDEN, KORETZKY, TESSIER,
                                                FINN, BLOSSMAN & AREAUX, L. L. C.

By:     /s/ David F. Waguespack
        David F. Waguespack, T.A. (#21121)
        1100 Poydras Street, Suite 3100
        New Orleans, LA 70163
        Telephone: (504) 585-3800
        Telecopier: (504) 585-3801

        PATTON BOGGS, LLP
        Robert W. Jones
        (Texas State Bar No. 10951200)
        Brent R. McIlwain
        (Texas State Bar No. 24013140)
        2000 McKinney, Suite 1700
        Dallas, Texas 75201-8001
        Direct: 214-758-1500
        Fax: 214-758-1550
        (Pro Hac Vice Motion Pending)

*Attorneys for Atalaya Administrative LLC, Atalaya Funding II, LP, Atalaya Special Opportunities Fund IV LP (Tranche B), and Atalaya Special Opportunities Fund (Cayman) IV LP (Tranche B)*

# CERTIFICATE OF SERVICE

This is to certify that service of this document has been made on the 13th day of September, 2012 by electronic service through the Court's transmission facilities upon those persons listed as recipients of electronic notice on the Notice of Electronic Filing document generated by the Court's System at the time of the filing of this document and on those parties listed below via electronic mail.

      /s/ David F. Waguespack  
      David F. Waguespack

"Alice_Dukes@lawb.uscourts.gov" – Alice Dukes  
"ROBERT.KLYMAN@lw.com" – Robert Klyman  
"bmcilwain@pattonboggs.com" - Brent McIlwain  
"CLauer@gordonarata.com" – Courtney Lauer  
"ESpurgeon@gordonarata.com" – Elizabeth Spergeon  
"Frances.Hewitt@usdoj.gov" – Frances Hewitt  
"Gail.McCulloch@usdoj.gov" – Gail McCulloch  
"GREGORY.LUNT@lw.com" – Gregory Lunt  
"JAlcantara@gordonarata.com" – June Alcantara  
"LPhillips@gordonarata.com" – Louis Phillips  
"PKopfinger@gordonarata.com" – Peter Kopfinger  
"RRichmond@gordonarata.com" – Ryan Richmond  
"steve.rosenblatt@butlersnow.com" – Steve Rosenblatt

4829-7967-9505, v. 1